**In re Forrest LITTLE Janet R. Little dba: Little's Farm Supply, Debtors.**

**Bankruptcy No. 1–85–01687.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 18, 1987.

Peter J. Strauss, Cincinnati, Ohio, for debtors.

Mark Florence, Lebanon, Ohio, for Production Credit Ass'n.

## DECISION AND ORDER RE: CRAM–DOWN–PCA

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, an amended plan was filed and a hearing on confirmation thereof was held April 21, 1986. There were objections to the amended plan, as well as a number of non-accepting classes. Debtor subsequently filed a second amended plan which it represented to the court contained consensual agreements with the several objectors and non-acceptors, so that the plan as further amended by such agreements was now in condition for confirmation. The court then noticed the second

amended plan to creditors, who were invited to record any objection they might have to the second amended plan. PCA filed an objection. The matter then proceeded further for consideration by the court of whether the plan was fair and equitable with respect to PCA pursuant to 11 U.S.C. § 1129(b), so that the plan could be confirmed without the affirmative vote of PCA.*

■ PCA is a secured creditor of debtors. PCA filed a proof of claim in the case which asserts that the amount owed it on account of principal is $162,678.98, while the amount for interest is $65,263.69. It was stipulated at the hearing that debtor had no equity in the real estate by which the indebtedness to PCA was secured. It was stipulated further, that the value of collateral available to PCA in the real estate mortgaged to it by debtors was $157,000.00. Also stipulated by the parties at the hearing was that the subject real estate in the mortgage is essential to an effective reorganization. The real present dispute between these parties is how a certain credit to which debtors are entitled should be applied with respect to their indebtedness to PCA. The amount in question is $19,090.00, and arises from a redemption of PCA's stock which had been purchased by debtors. It was the position of debtors that the $19,090.00 should be applied to principal. In fact, PCA applied it to interest. In respect to this controversy, we are satisfied that the relationship of the parties in respect to how the $19,090.00 credit is to be applied is governed by the language on the membership agreement. This provides that upon redemption, credit will be applied to interest first. That debtors had not read the language of the membership agreement in PCA is immaterial; they were bound by its terms. The foregoing resolves the central dispute between these

parties, that is, the amount of principal indebtedness due PCA by debtors. We hold that it is the amount set forth in the PCA proof of claim.

The relevant statutory provision with regard to the question of whether the plan proposed is fair and equitable with respect to PCA are as follows:

§ 1129(b)(2)

"For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the amount of such claim, of a value, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization of such holders of the indubitable equivalent of such claims."

We examined the plan provisions regarding PCA to see whether they comply with the statutory criteria. It would appear that

---

* Actually hearing was held, not on the fair and equitable issue, but rather in Contested Docket "E", a file containing a motion for relief from stay filed by PCA which had been filed prior to the hearing on confirmation of the amended plan. The parties entered into a settlement agreement thereof, which agreement was embodied in a court order. We vacated that order when it appeared that there had not been a meeting of the minds between the parties in arriving at the agreed order. The events to which we refer other than the filing of the motion transpired long subsequent to the hearing on confirmation, as well as the curative actions surrounding the second amended plan. The parties then agreed to treat the hearing in Contested Docket "E" as a hearing regarding the fair and equitable question.

debtors seek to bring PCA within the provisions of § 1129(b)(2)(A)(i).

Examination of the second amended plan proposed by debtors indicates that such plan is deficient in a major respect in meeting the statutory test. That is, there is no express provision that PCA retain the liens securing its claims to the extent of the allowed amounts of such claims. We will assume that debtors will be willing to further amend the second amended plan to supply this deficiency. We return then to the major question before us; will PCA receive on account of its claim deferred cash payments totalling at least the allowed amount of its claim. The treatment of PCA is set forth in Class VII. The plan language reads:

"Production Credit Association is the holder of a secured claim, the principal amount of which is disputed as set forth below, secured by a note and first and second mortgages on certain land valued at approximately $100,000; said claimant will be paid in annual installments of $50,000.00, commencing January 1, 1987, with installments due on the same date of each subsequent year until principal and interest are paid in full. The principal amount of the claim is disputed. Debtors claim the correct principal amount is $138,678.98; Production Credit Association claims the correct amount is $162,678.98. The principal amount shall bear interest at the variable contract rate of Production Credit Association. Each $50,000 installment payment shall be aplied to principal until the principal is paid in full; thereafter, each of said payments shall be applied to interest. There will be no prepayment penalty."

While the plan provision makes reference to a dispute as to the principal amount owed PCA, in our earlier holding herein, we have resolved that dispute. In view of the agreement between the parties at the hearing that the value of the collateral for PCA in debtors' real estate is $157,000.00, while the indebtedness is that claimed by PCA, $162,678.98 on account of principal plus interest in the amount $65,263.69, and the plan undertakes to make payments on account of this claim in annual installments of $50,000.00 until principal and interest are paid in full, it might appear that the statutory test by which it may be determined whether the plan is fair and equitable, has been met.

Such a conclusion would be incorrect. To the contrary, the statutory requirements set out in § 1129(b)(2)(A)(i)(II) have not been met. There is a "present value" requirement there appearing in the statute. *In re Timber Tracts, Inc.,* 70 B.R. 773 (Bankr.Mont.1987.) Where a creditor receives payment over time, an adjustment must be made in the total amount paid him in recognition of the fact that a payment in the future is of less value than a present payment. Debtors' second amended plan makes no provision for such an adjustment.

To recapitulate, debtors' second amended plan cannot be confirmed because it fails to provide that creditor retain its liens, and also that no adjustment of the proposed deferred payments is provided in the plan. Confirmation is denied.

SO ORDERED.